## COAL CREEK MINING AND MANUFACTURING COMPANY *v.* THOMAS L. MOSES.

1. TRESPASS. *Damages. Mining.* It is the duty of a person working a coal mine on his own land, near to the boundary line, to make surveys to prevent encroachment on the adjoining land, and to keep accurate accounts of the coal mined near the line, and, if he fail to do so, the evidence as to the quantity of coal taken will be construed most strongly against him, and the least evidence of bad faith on his part would make every intendment in favor of the injured party.

2. SAME. *Same Same.* But if such person is shown to have acted fairly, and the trespass is proved to have been unintentional and inadvertent, the measure of damages is the value of the coal *in situ* before the trespass, and the incidental injury, if any, to the land by the taking or mode of taking.

3. SAME. *Same. Same.* The weight of recent authority, even in actions at law, where the trespass is inadvertent, by one miner on the lands of another, is to limit the recovery to just compensation, and this rule is certainly not changed by bringing the suit in chancery.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

ANDREWS & THORNBURGH and A. S. PROSSER for complainant.

HENDERSON & JOUROLMON for defendant.

COOPER, J., delivered the opinion of the court.

Bill filed March 28, 1883, to charge the defendant with the value of coal mined by him on the land of the complainant. The master and chancellor agreed upon the amount of coal mined, the exceptions of the parties to the master's report being all disallowed, and the chancellor charged the defendant with the value of the coal thus mined at the mouth of the mine, deducting only the expense of removing it there from the place where it was dug. Both parties appealed.

The defendant owned a small tract of land adjacent to a much larger tract of complainant's, the dividing line between the two tracts being well known and defined. The defendant made an opening on his land, about one hundred and forty-five feet from the dividing line, for the purpose of mining coal, running the main shaft in a direction inclining to-

wards the line, with branches right and left nearly at right angles therewith. It is conceded that some of these shafts to the right were driven over on the land of the complainant. And the contest is partly over the quantity of coal thus mined, and partly over the measure of damages sustained.

The bill charges that the defendant, in connection and partnership with others in working their mine, "unlawfully and without the consent" of complainant, had run the said mine over the boundary of complainant's land, and taken therefrom a large amount of complainant's coal, and sold and converted the same. That the complainant cannot state the amount of the coal thus sold and converted, for the reason that the defendant and his partners, with the purpose of preventing the complainant from ascertaining the amount, pulled down and took away the pillars and props which held up the roof of the mine, thereby causing the roof to fall in throughout a large extent of the entries and chambers, and rendering it impossible for the engineers and agents of the complainant to explore the mine, measure the excavations made, and ascertain with accuracy the amount of coal taken out. The bill then adds: "Your orator charges that all the coal taken from your orator's land as aforesaid was still the property of your orator after it was mined and removed, and when it was converted, appropriated and sold by the defendant and his partners, and that all the money received by them, or either of them, for said coal was in law received by them to the use of your orator. And your orator electing to

sue for the value of said coal so converted, and not for the wrongful removal thereof, charges that said Moses, as one of said partners who appropriated, converted and sold the same, is indebted to your orator in the amount of the full value thereof after it had been brought to the surface and sold by them, or after it had been placed on the railroad cars for shipment to market." The prayer of the bill is that an account be taken of the amount of coal so converted, and for a decree therefor.

The defendant, in his answer, admits that in working the mine the foreman, superintendent and workmen did " inadvertently and unintentionally" run across the boundary into complainant's land, and remove therefrom a small amount of coal without the consent of complainant or warrant of law, and that the coal was taken and sold by the defendant. He says that the trespass was committed inadvertently, the defendant having frequently, and in ample time, directed the foreman not to go upon complainant's land, but to leave a safe margin, which instructions were intended to be complied with, and the mistake being occasioned by the unevenness of the surface of the ground, and the nearly level grade of the excavation. As soon as defendant's attention was called to the fact, he at once stopped work in that part of the mine, and complainant never had any further cause of complaint. The answer further states that measurements were made and estimates taken by agents of the complainant sent for the purpose, so as to ascertain the amount of coal thus mined, with the result of which

defendant was satisfied. From these measurements and estimates the defendant finds, he says, that the coal thus mined would not exceed 3248 bushels, which, at a royalty of one cent per bushel, the rate at which the complainant was leasing its lands for mining purposes, would be $32.48. And, in order to prevent litigation, he made a formal tender of $90 to the complainant, being about three times the actual sum due, " in full satisfaction of the coal mined," which sum he is ready to bring into court, if complainant will accept the same. Upon the refusal of complainant to accept the tender, defendant at once offered, if the company preferred a new measurement, to allow them to send any competent person to the mine, and to afford him every facility for making the measurement and ascertaining the quantity of coal taken, and to pay for the amount ascertained at the usual price. Shortly afterwards complainant and defendant's partner agreed that an engineer might be sent by complainant to estimate the coal, to be paid for at one cent a bushel, but the engineer was never sent. The defendant denies that either he or his partner, with the design of preventing complainant from ascertaining the amount of coal mined, pulled down the pillars, props or supports of the roofs, and says that the falling in of the mine was the usual and necessary effect of time.

The proof shows that defendant commenced working his mine in August, 1880, the foreman being instructed not to cross the boundary line, but to leave a margin. The foreman says he did step the dis-

Coal Creek Mining and Manufacturing Co. v. Moses.

tance on the surface of the earth, intending to follow his instructions, but he was deceived in the direction of the first branch, and the miners themselves began to talk about the mine having crossed the boundary. Under these circumstances, on April 13, 1881, the complainant sent an engineer, who did actually measure the surface of the ground, and the first, second and third branches of the mine. As the result of this survey, the field notes of which are appended to his deposition in this cause, he found, and so reported to the defendant that the first branch was over the line about twenty-seven feet, but that the other branches were not, and he told defendant's foreman how far he might safely go, which the latter marked on the walls of the cuts. Work was at once stopped in branch No. 1, and never resumed. The other branches were continued to be worked within the limits designated by the engineer. In June, 1881, the same engineer returned, and measured branches 5, 6 and 7, No. 4 having, it seems, fallen in, and told defendant, who was with him, that none of them were over the line. After the commencement of this litigation, the same engineer makes a new survey of the surface of the ground, and finds that he was in error in his first survey by about eleven and one-half feet, to that extent increasing the trespass on complainant's land, and the amount of coal mined. And the master has increased the estimate of coal taken, upon the basis of this last survey, to 8,890 bushels. The evidence is clear that neither the defendant nor his foreman intended to, or did actually permit the working

of the branches beyond the points designated by the complainant's engineer, and the weight of proof is that the work was not carried any further. A few of the miners are introduced by the complainant as witnesses, who undertake to guess at the length of the several branches, only one of them having adopted any mode of measurement, and he only as to one branch. The testimony of these witnessess is corrected by the time books of the defendant, showing the actual amounts of coal mined and paid for. The master has considered the testimony, and, properly enough, under the circumstances, has given it due weight in favor of the complainant. We concur with the chancellor in thinking that the master's estimate is substantially correct. The proof entirely disproves the charge of the bill that props were intentionally removed to prevent accurate measurements. The roof of the mine seems to have been of a rotten clay, through which water seeped, and fell in, in some instances, before the work was completed, and in other cases very soon after the work of mining ceased. But if the complainant had acted upon the defendant's proposition for new measurements about the time of the tender of $90, which seems to have been within a month or two after the visit of complainant's engineer in June, 1881, there would have been little difficulty in obtaining accurate estimates.

Upon the foregoing facts we may say that it was the duty of the defendant in the first instance to have made the necessary surveys to prevent any encroachment upon the land of the complainant. He

Coal Creek Mining and Manufacturing Co. *v.* Moses.

was in fault in not so doing, and he was also in fault in not keeping accurate accounts of the coal mined in each of the branches in the vicinity of the boundary line. For these omissions of duty on his part the master was clearly right in construing the evidence liberally against him. And if there had been the least evidence of bad faith on the part of the defendant, every intendment would be in favor of his adversary. But we think the evidence conclusively demonstrates his good faith. He not only threw no obstacle in the way of the complainant's engineer, but he showed his willingness to abide by his action. Nay more, after making a liberal tender upon the basis of the measurements of that engineer, conceding for the present that the measure of damages would be the usual royalty for mining, he was willing for a new measurement, and promised to settle by it. And there can be no doubt that he would have joined in making new measurements, leaving the question of the measure of damages open. Under these circumstances, the original fault of the defendant may be treated, in view of the assurances of the complainant's engineer and the subsequent conduct of the complainant, with leniency. The trespass on the complainant's land was clearly not wilful and intentional, but inadvertent.

The authorities are hopelessly in conflict as to the proper measure of damages where coal or ore has been mined by one person upon the land of another. Much of this conflict has grown out of the forms of action at common law, and the difficulty of confining

the recovery to mere compensation, where the principle, upon which the form of action was supposed to rest, allowed a larger recovery. The tendency of the recent decisions is to ignore the form of action, and to regulate the recovery by the rule of compensation, looking to the intention of the defendant. The course of English decision is curiously illustrative of the change of judicial opinion. Originally, even in the case of an inadvertent trespass, the plaintiff was held entitled to the value of the coal after it was mined, without any deduction for the cost of severing: *Martin* v. *Porter*, 5 M. & W., 551; *Morgan* v. *Powell*, 3 Ad. & El., 281; *Wild* v. *Holt*, 9 M. & W., 472. Afterwards, the rule was modified so that in a case where the trespass was fully proved, but without fraud, it was held that the defendant was liable only for the value of the coal, deducting the cost of its severance and carrying it to the mouth of the mine: *In re United Merthyr Collieries Company*, L. R., 15 Eq., 46. Again, even at law, in an action of trover, if the jury found that the defendant acted fairly and honestly under a claim of right, they were instructed to give the fair value of the coal as if the coal field had been purchased from the defendant: *Wood* v. *Morewood*, 3 Ad. & El., (N. S.), 440. And finally, in a case in the House of Lords, it was held that where the defendant innocently and ignorantly worked the coal beyond his boundary, the measure of damage was the value of the coal *in situ*, in addition to any surface damage there may be; *Livingston* v. *Rawyard's Coal Company*, 42 L. T., (N. S.), 334. And this rule

has been adopted by the court of chancery: *Hilton* v. *Wood*, L. R., 4 Eq., 432; *Jegon* v. *Vivian*, L. R., 6 Ch., 760. The tendency of the American decision is to adopt the same rule, whether the action be trespass, as in *Foote* v. *Merrill*, 54 N. H., 490, or trover, as in *Forsyth* v. *Wells*, 41 Penn. St., 291. "Where," says the court in this last case, "there is no wrongful purpose or wrongful negligence in the defendant, compensation for the real injury done is the purpose of all remedies; and so long as we bear this in mind we shall have but little difficulty in managing the forms of action so as to secure a fair result. If the defendant in this case was guilty of no intentional wrong, he ought not to have been charged with the value of the coal after he had been at the expense of mining it, but only with its value in place, and with such other damage to the land as his mining may have caused. Such would be manifestly the measure in trespass for mesne profits." And so we have held in *Ross* v. *Scott*, in an opinion delivered with this. And such was the decision of this court in the case of a wrongful trespasser who cut timber on land in *Ensley* v. *Nashville*, 2 Baxt., 144.

The complainant in his bill says that he elects "to sue for the value of said coal so converted, and not for the wrongful removal thereof." He then argues that his bill is in the nature of an action of trover for the conversion of the coal after it had been mined, and gives him a right to its full value without deduction, or, at any rate, only a deduction for

bringing the coal, after it is severed, to the mouth of the mine. And this is the rule of the early cases in England, and of the courts of Maryland and Illinois. But the fact that any deduction is allowed shows that the action of trover does not allow the plaintiff to recover the full value of the property converted. And the learned counsel of the complainant in this case admits that, according to the authorities, the recovery is increased or diminished by the greater or less wrongful intent in the conduct of the defendant. If, he says, the coal was taken under an honest but mistaken belief of ownership, the measure of damages is the value of the coal at the mouth of the mine, deducting the expense of digging and transporting it to the mouth of the mine. But if the action is thus flexible, it may well be made still more so in order to secure the end of all action, just compensation. "It is quite apparent therefore," says the Supreme Court of Pennsylvania in *Forsyth* v. *Wells*, *ut supra*, "that this form of action is not so uniform and rigid in its administration as to force upon us any given or arbitrary measure of compensation. It is simply a form of reaching a just compensation, according to circumstances, for goods wrongfully appropriated. Where there is no fraud or violence or malice, the just value of the property is enough." And this is the result of the late English decisions in the action of trover. The action is, therefore, what our statute provides that all actions for wrongs to property shall be, in which money only is demanded as damages, and that is an action on the

facts of the case: New Code, sec. 3441. And by waiving the tort, and coming into equity, the complainant has certainly not rendered his action less flexible. The facts of this case do not show any special ground for damages to the complainant's land, and all that he can reasonably ask is just compensation, which would be the value of the coal taken *in situ*, or the usual royalty for mining, one cent per bushel.

The tender made by the defendant to the complainant was not technically valid, because it was accompanied with the demand of a receipt in full, and because not brought into court. But we think it is sufficient, in connection with the other circumstances of the case, to require us to exercise the discretion of the chancery court in the matter of costs, and to charge the complainant with the costs of the court below. The defendant, having prosecuted his appeal with effect, is of course entitled to the costs of this court as against the complainant.